UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPERATION ABLE OF GREATER BOSTON, INC. Plaintiff, v. NATIONAL ABLE NETWORK, INC. Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Operation ABLE of Greater Boston, Inc. ("Operation ABLE") brings this action against defendant National Able Network, Inc. ("National Able").

## PARTIES

1.    Plaintiff, Operation ABLE of Greater Boston, Inc., is a Massachusetts non-profit corporation with its principal place of business at 131 Tremont Street, Suite 301, Boston, Massachusetts.

2.    Defendant, National Able Network, Inc., is an Illinois not-for-profit corporation, with its principal place of business at 180 North Wabash Avenue, Chicago, Illinois.

## JURISDICTION AND VENUE

3.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition claims). This court also has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), because those claims are substantially related to the same acts giving rise to the federal claims.

4.      This court has personal jurisdiction over defendant National Able under

G.L. ch. 223A, § 3, because National Able has committed and continues to commit acts

of trademark infringement, trademark dilution, and unfair competition while using

trademarks and service marks confusingly similar to plaintiff Operation ABLE's marks to

conduct or solicit business through advertising, marketing, and promoting of confusingly

similar charitable services in Massachusetts.

5.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(1), because

National Able is a corporation subject to personal jurisdiction in the District of

Massachusetts, and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the

infringing activity and unfair competition occurred and continues to occur in the District

of Massachusetts.

## FACTUAL BACKGROUND

### Operation ABLE

6.      Operation ABLE is a Massachusetts non-profit entity that provides

charitable services to mature workers, including job training and career counseling,

among other services.

7.      Since at least 1985, Operation ABLE has consistently provided its

charitable services throughout Greater Boston using the trade name and service mark

OPERATION ABLE and the service mark ABLE (the "Marks").

8.      Operation ABLE has priority of use in the Marks over defendant National

Able in Greater Boston.

9.      The Greater Boston area in which Operation ABLE has continuously

operated is Suffolk, Essex, Middlesex, Norfolk, and Worcester counties.

10.    Operation ABLE offers a number of charitable services in which it utilizes the Marks, including training programs for workers, services for employers, and advocacy on behalf of mature workers.

11.    Operation ABLE has invested substantial capital, both financial and human, in developing its charitable services over the past 24 years, including development of a network of social service providers, dedicated professionals, loyal participants, and a substantial donor network on which it heavily relies.

12.    Operation ABLE and its Marks are famous in Greater Boston, and the organization has received significant recognition for its charitable services.  In particular, Operation ABLE received letters of support recognizing "Operation ABLE's long and effective history of working with" mature workers from Congressman Markey, the Massachusetts Department of Labor and Workforce Development, the Boston Private Industry Counsel, the City of Boston's Office of Jobs and Community Services, the Metro North Regional Employment Board, the Metro South/West Regional Employment Board, and the South Coastal Workforce Investment Board.

13.    Operation ABLE has also invested considerable time, money, and effort in promoting its Marks, and in building the goodwill associated with the Marks.  Operation ABLE has been repeatedly recognized for its charitable work by the media, including the Boston Globe, Boston Herald, Christian Science Monitor, and Boston Business Journal.

14.    Among Operation ABLE's various job training programs, one of its most significant from a revenue and appreciation standpoint, is the Senior Community Service Employment Program ("SCSEP").

15.     SCSEP is a federal program originally created by the Economic Opportunity Act of 1965, and re-authorized by the Older American Act Amendments of 2000.  SCSEP promotes useful part-time opportunities in community service organizations for persons with low incomes who are 55 years of age or older and assists older workers in transitioning to unsubsidized employment.

16.     SCSEP is administered by the U.S. Department of Labor ("DOL"), which provides funding directly to certain SCSEP administrators throughout the country (referred to herein as "federal SCSEP administrators").  DOL also provides SCSEP funding to the states themselves, which, in turn, provide grants to local organizations, which act as state SCSEP administrators.

17.     Through grants from the Commonwealth of Massachusetts, Operation ABLE is the exclusive state SCSEP administrator in Essex and Worcester Counties, and a state SCSEP administrators in Middlesex and Suffolk Counties.  Operation ABLE expects to continue in that role for the next several years.

18.     In addition, Operation ABLE has been for the past six years, the primary federal SCSEP administrator in Essex and Middlesex Counties, as a sub-grantee via defendant National Able, which holds a primary SCSEP grant from DOL.

19.     Through SCSEP, whether funded by the Commonwealth or through DOL via National Able, Operation ABLE provides on-the-job-training and placement support to a substantial number of low-income seniors in various counties in Greater Boston.

20.     As detailed in the DOL regulations, SCSEP participants must be at least 55 years old, and have a family income of no more than 25% over the federal poverty level.  (In 2009, the maximum income for a family of four would be $27,562.50).

4

Enrollment priority is given to persons over age 60, veterans, and qualified spouses of veterans, as well as, minority, limited English-speaking, and Native American individuals, and those with the greatest economic and special employment needs.

21.     As a SCSEP administrator both on the state and federal level, Operation ABLE has invested substantial time, money, and effort in publicizing SCSEP with potential participants, through direct mailings, presentations at One-Stop-Career Centers, advertisements in community newspapers, flyers at community centers, churches, and libraries, and numerous other forms of community outreach.

22.     SCSEP participants agree with Operation ABLE (and any SCSEP administrator) to work 20 hours per week in a non-profit or government agency, earning minimum wage (currently $8.00 per hour in Massachusetts).

23.     In addition to identifying and working with SCSEP participants, Operation ABLE plays a vital role in identifying, recruiting, and supervising non-profit organizations and government entities to "hire" participants and act as training sites.

24.     These training sites provide on-the-job training and vital experience for SCSEP participants, not classroom instruction.  The goal of SCSEP is for participants to gain valuable workplace experience during their placement, then move into permanent, unsubsidized employment, either with the employer where they trained, or a different employer.

25.     In addition to recruiting, identifying, and matching SCSEP participants and training sites, Operation ABLE administers the entire program, including payroll for SCSEP participants.  To handle all of these responsibilities, SCSEP has had three full-

time professional staff and one part-time records coordinator dedicated to administering the program.

## Defendant's Unlawful Conduct

26.     Prior to 2004, Defendant was known as "Operation ABLE, Inc" and operated only in Chicago.  After changing its name to National Able Network, Defendant began expanding into other geographic areas and now has offices in Chicago; Calumet City, Illinois; Indianapolis, Indiana; Bangor, Maine; and Manchester, New Hampshire.

27.     Defendant National Able has used and continues to use the trade names and service marks NATIONAL ABLE NETWORK and ABLE (the "NAN Marks").

28.     In April 2009, National Able began to execute a wholesale, coordinated effort to take over the services, infrastructure, employees, goodwill, and reputation of Operation ABLE in Greater Boston.

29.     First, on April 23, 2009, National Able sent a letter to each and every one of Operation ABLE's federal SCSEP participants and training sites.  The participants and training sites at Operation ABLE have been developed over literally years through the substantial efforts of Operation ABLE.

30.     In the letter to the training sites, National Able stated that "effective July 1, 2009, National Able Network, Inc. will assume the administration of the Federal Senior Community Service Employment Program (SCSEP) in which you participate."

31.     National Able included in the letter a list of "Frequently Asked Questions," which stated that "National Able Network will host a 'Town Hall' meeting which is tentatively scheduled for mid-June.  During that time, you will have an

opportunity to meet the National Able Network staff who will provide you with more information about the transition."

32.     National Able further stated in the letter that questions should be directed to National Able's employees in Chicago, not Operation ABLE in Boston.

33.     National Able did not state that after June 30, 2009, Operation ABLE would continue to provide the same charitable services in Greater Boston as it always has, including that Operation ABLE would continue to administer SCSEP grants from the Commonwealth of Massachusetts after July 1, 2009.

34.     Like the letters sent to the training sites, the letters to SCSEP participants stated that "effective July 1, 2009, National Able Network, Inc. will assume the administration of the Federal Senior Community Service Employment Program (SCSEP) in which you participate."  Also like the letter to training sites, the participant letters stated that questions should be directed to National Able staff in Chicago and did not state that Operation ABLE would continue to provide the same services in Greater Boston after July 1, 2009.

35.     National Able only had access to the names and addresses of these individuals and organizations, because Operation ABLE had shared the information with it to facilitate audits and reporting that are required by the DOL under SCSEP.  Operation ABLE never intended that National Able would utilize this information in competition with Operation ABLE, and use it to facilitate National Able's takeover of business from Operation ABLE.

36.     On the same day those letters were sent, representatives from National Able flew from Chicago to Boston to inform Operation ABLE's Executive Director that

National Able would not renew the sub-grant for the federal SCSEP grant (which expires on June 30, 2009), and under which National Able was the primary grant holder and Operation ABLE a sub-grantee. The representatives of National Able told Operation ABLE's Executive Director that, although Operation ABLE's performance under the sub-grant was not an issue, National Able sought to handle the grant itself as part of its long-term strategic vision to expand nationally. National Able confirmed this decision in a letter to Operation ABLE on April 27, 2009.

37.     Nevertheless, after July 1, 2009, Operation ABLE will continue to hold the grant from the Commonwealth of Massachusetts for SCSEP in Greater Boston, and will continue to offer its other services in Massachusetts using its Marks.

38.     Certain SCSEP participants have their job training at Operation ABLE, with Operation ABLE acting as the training site. These participants work under the supervision of Operation ABLE's three professional staff to assist in administering SCSEP, and are referred to as "participant staff," reflecting their dual role as SCSEP participants and administrative staff.

39.     On April 24, 2009, National Able's senior staff held a telephone conference with Operation ABLE's SCSEP participant staff. During the telephone conference, National Able told these participant staff that National Able would be taking over the federal SCSEP grant as of July 1, 2009, and that they would continue to be paid—if they did nothing—after July 1, 2009 by National Able, instead of Operation ABLE.

40.     Again, National Able did not inform the participant staff that Operation ABLE would continue to provide SCSEP services under the state grant, nor that its other services would continue.

41.     Upon information and belief, National Able has also recruited various members of Operation ABLE's professional staff, including two of its SCSEP program managers, to work for National Able in Greater Boston.

42.     Furthermore, on May 27, 2009, National Able posted a job listing on the job website, newenglandjobs.org, seeking a "senior management professional to direct its Massachusetts operations."

43.     In all of these activities, National Able has used the infringing NAN Marks in commerce in Greater Boston.

44.     The NAN Marks are confusingly similar to Operation ABLE's Marks. The dominant portion of the NAN Marks and Operation ABLE's Marks, "ABLE," is identical. The dominant portion of the Marks sounds identical and looks identical in print. The use of the merely descriptive terms NATIONAL and NETWORK does not distinguish the mark NATIONAL ABLE NETWORK from OPERATION ABLE.

45.     National Able's entry into Greater Boston, using a confusingly similar mark to Operation ABLE and offering the exact same services as Operation ABLE has created numerous instances of actual confusion among both training sites and participants.

46.     At least twenty-five SCSEP participants, have reported being "confused" after receiving the April 23, 2009 letter from National Able. Certain participants did not

understand that National Able and Operation ABLE were separate corporations, but rather believed that the letter was from Operation ABLE, which had changed its name.

47.    Likewise, staff at the various training sites, which received the April 23 letters, including the Pepperell Senior Center, Lynn Career Center, Salem Career Center, Salem Council on Aging, Gloucester Senior Center, Merrimack Valley Elder Services, Belmont Council on Aging, Margaret Fuller House, and Generations, Inc. were confused by National Able's marketing and solicitation of the exact same services that Operation ABLE has been providing for years in Greater Boston.

48.    National Able's infringement of Operation ABLE's Marks and its providing the exact same services (indeed using the same Department of Labor grant) causes confusion as to source, sponsorship, and affiliation.

49.    National Able is using the confusion between the NAN Marks and Operation Able's Marks to aid its goal of moving into Greater Boston, and taking over Operation Able's established good will and infrastructure.

50.    This confusion further tarnishes Operation ABLE's carefully crafted reputation, and risks alienating its network of social service organizations, donors, and participants.  In particular, confusion among Operation ABLE's government funders, corporate and foundation donors, and individual donors may prevent Operation ABLE from raising the funds necessary to provide charitable services in the future.

51.    National Able has used a confusingly similar mark to Operation ABLE's Marks in connection with the exact same services as those offered by Operation ABLE, even though it knew of Operation ABLE's use of the OPERATION ABLE and ABLE

Marks.  National Able had actual notice of Operation ABLE's Marks when it started using the NAN Marks in Greater Boston.

52.     National Able's unauthorized use of the NAN Marks in Greater Boston has and will continue to cause irreparable injuries to Operation ABLE by falsely associating National Able with Operation ABLE and depriving Operation ABLE of the rights to its Marks, harming Operation ABLE's reputation and creating confusion among the public.

## COUNT I
### *Trademark Infringement*

53.     Operation ABLE restates and incorporates by reference its allegations contained in paragraphs 1 through 52.

54.     National Able has used and continues to use the unauthorized NAN Marks in Greater Boston in connection with the marketing, solicitation, and adverting of its charitable services in commerce.

55.     National Able's unauthorized use of the NAN Marks in Greater Boston was intended to cause, has caused, is causing, and is likely to continue to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of National Able with Operation ABLE as to the origin, sponsorship, or approval of National Able's services.

56.     National Able's infringement of the OPERATION ABLE and ABLE marks has been willful, wanton, reckless, and in total disregard of Operation ABLE's rights.

57.     National Able's unauthorized use of the NAN Marks constitutes trademark infringement, unfair competition, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     National Able's unauthorized use of the NAN Marks in Greater Boston caused and is likely to continue to cause substantial and irreparable injury to Operation ABLE, which injury cannot be accurately computed at this time, and will continue to cause substantial and irreparable injury unless National Able's use of the NAN Marks in Greater Boston is enjoined by this Court.

59.     By reason of the foregoing, Operation ABLE has suffered monetary damages and loss of goodwill and is entitled to injunctive relief and damages in an amount to be proved at trial.

**COUNT II**
***State Law Trademark Infringement***

60.     Operation ABLE restates and incorporates by reference its allegations contained in paragraphs 1 through 59.

61.     Operation ABLE owns and enjoys common law rights in its Marks which are superior to any rights National Able may claim to any similar mark.

62.     As such, Operation ABLE's Marks are entitled to protection under Mass. G.L. ch. 110H, § 13.

63.     National Able's unauthorized use of the NAN Marks in Greater Boston was intended to cause, has caused, is causing, and is likely to continue to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of National Able with Operation ABLE as to the origin, sponsorship, or approval of National Able's services.

64.    National Able's infringement of the OPERATION ABLE and ABLE marks has been willful, wanton, reckless, and in total disregard of Operation ABLE's rights.

65.    National Able's unauthorized use of the NAN Marks in Greater Boston caused and is likely to continue to cause substantial and irreparable injury to Operation ABLE's business reputation, which injury cannot be accurately computed at this time, and will continue to cause substantial and irreparable injury to Operation ABLE's business reputation unless National Able's use of the NAN Mark in Greater Boston is enjoined by this Court.

66.    Operation ABLE is entitled to injunctive relief to enjoin National Able's further use of Operation ABLE's Marks under Mass. G.L. ch. 110H, § 13.

### COUNT III
### *Trademark Dilution*

67.    Operation ABLE restates and incorporates by reference its allegations contained in paragraphs 1 through 66.

68.    Plaintiff's OPERATION ABLE and ABLE Marks are famous and well known and recognized in the United States and were famous before the inception of Defendant's infringing conduct.

69.    As such, Operation ABLE's Marks have achieved the degree of fame entitling them to protection under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70.    National Able's use of the NAN Marks which are confusingly similar to plaintiff's OPERATION ABLE and ABLE Marks in connection with confusingly similar services have diluted the distinctive quality, strength, and reputation of plaintiff's

OPERATION ABLE and ABLE Marks, and violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

71.     National Able's conduct has demonstrated a willful intent to trade on Operation ABLE's reputation and to cause dilution of its famous marks.

72.     Operation ABLE is entitled to injunctive relief to enjoin National Able's further use of Operation ABLE's trademarks under 15 U.S.C. § 1125(c)(1), and damages under 15 U.S.C. § 1125(c)(2).

## COUNT IV
### *State Law Trademark Dilution*

73.     Operation ABLE restates and incorporates by reference its allegations contained in paragraphs 1 through 72.

74.     National Able's unauthorized use of the NAN Marks was intended to cause, has caused, is causing, and is likely to continue to cause dilution of the distinctive quality of Operation ABLE's Marks in violation of Mass. G.L. ch. 110H, § 13.

75.     Such unauthorized use of the NAN Marks caused and is likely to continue to cause substantial and irreparable injury to Operation ABLE, which injury cannot be accurately computed at this time, and will continue to cause substantial and irreparable injury unless National Able's use of the NAN Marks is immediately enjoined by this Court.

76.     National Able's conduct as described has been willful, wanton, reckless, and in violation of the rights of Operation ABLE.

77.     By reason of the foregoing, Operation ABLE has been damaged and is entitled to immediate injunctive relief.

## COUNT V
### *Common Law Trademark Infringement and Unfair Competition*

78.     Operation ABLE restates and incorporates by reference its allegations contained in paragraphs 1 through 77.

79.     Operation ABLE owns and enjoys common law rights in its Marks which are superior to any rights National Able may claim to any similar mark.

80.     National Able's unauthorized use of the NAN Marks in connection with the sale, distribution, offering for sale, marketing, or advertising, of its charitable services, is, and has been, committed knowingly in order to capitalize on and misappropriate Operation ABLE's valuable goodwill in its Marks that it created through continuous usage of its marks over the past 24 years.

81.     National Able's unauthorized use of the NAN Marks in Greater Boston has caused, is causing, and is likely to continue to cause confusion, or mistake or to deceive consumers as to the source of origin of such services.

82.     National Able's acts and conduct as set forth herein constitute trademark infringement in violation of Massachusetts common law.

83.     National Able's acts and conduct as set forth herein constitute unfair competition, willful, unfair and deception acts or practices within the Commonwealth of Massachusetts and violations of Massachusetts common law.

84.     Both National Able and Operation ABLE are engaged in trade and commerce in the Commonwealth of Massachusetts.

85.     National Able's wrongful and infringing activities have intended to cause, have caused, and unless enjoined by this Court will continue to cause irreparable injury and other damage to Operation ABLE's business, reputation, and goodwill.

86.     National Able's conduct as described above has been willful, wanton, reckless, and in violation of the rights of Operation ABLE

87.     By reason of the foregoing, Operation ABLE is entitled to damages in an amount to be proven at trial.

## COUNT VI
### *Violation of Massachusetts General Law ch. 93A*

88.     Operation ABLE restates and incorporates by reference its allegations contained in paragraphs 1 through 87.

89.     Both National Able and Operation ABLE are engaged in trade and commerce.

90.     The acts complained of herein occurred primarily and substantially in the Commonwealth of Massachusetts.

91.     National Able's unauthorized use of the NAN marks in connection with the sale, distribution, offering for sale, or advertising, of its charitable services, is, and has been, committed knowingly in order to capitalize on and misappropriate Operation ABLE's valuable goodwill in its marks that it created through continuous usage of its marks over the past 24 years.

92.     National Able is using the confusion between the NAN Marks and Operation ABLE's Marks, recruiting wholesale Operation ABLE's staff, and directly soliciting Operation ABLE's entire federal SCSEP client list, in a coordinated attempt to take over the services, infrastructure, employees, goodwill, and reputation of Operation ABLE in Greater Boston.

93.     The acts alleged herein constitute unfair and deceptive practices within the meaning of G.L. ch. 93A, § 11.

94.     National Able and/or its agents or representatives' unfair and deceptive trade practices were knowing and willful.

95.     As a result of National Able's actions as alleged herein, Operation ABLE has suffered and will continue to suffer a loss of money.

96.     As a result of National Able's violations of Chapter 93A as alleged herein, Operation ABLE is entitled to damages in an amount to be proven at trial, such amount to be doubled or trebled, and an award of reasonable attorneys' fees and costs as provided by statute.

## PRAYER FOR RELIEF

**WHEREFORE**, Operation ABLE of Greater Boston, Inc., respectfully asks the Court to enter judgment in its favor on all counts and against National Able Network, Inc. and to grant Operation ABLE of Greater Boston, Inc., the following relief:

1.     A preliminary injunction to restrain, enjoin, and prevent National Able Network, Inc., and its officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with them from using the trade names and service marks NATIONAL ABLE NETWORK and ABLE or any other trademarks or service marks that may be considered confusingly similar to Operation ABLE's trade name and service marks in connection with National's Able's products and services in Greater Boston.

2.     A permanent injunction preventing Defendant National Able and its officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with them from:

a. In any way using, displaying, advertising, copying, imitating, or infringing upon the OPERATION ABLE and ABLE trademarks and service marks;.

b. Using or displaying the OPERATION ABLE and ABLE trademarks and service marks or confusingly similar variations thereof, in any written or oral advertisements, displays, signs, sales promotions, reservations, internet websites, or in any other public communication in connection with Defendant National Able's products or services;

c. Otherwise infringing upon plaintiff's OPERATION ABLE and ABLE trade names and service marks; and

d. Otherwise unfairly competing with Operation ABLE.

3.    Order Defendant National Able to account and pay over to Plaintiff Operation ABLE all gains, profits, and advantages derived from the use of the NAN Marks in Greater Boston, pursuant to 15 U.S.C. § 1117, and Mass. G.L. ch. 110H, § 12, and other applicable law;

4.    Order Defendant National Able to pay Plaintiff Operation ABLE the damages which plaintiff has sustained by reason of the conduct alleged herein;

5.    Order Defendant National Able to pay damages totaling three times the compensatory damages for its willful and intentional misconduct as provided for in 15 U.S.C. § 1117, Mass. G.L. ch. 93A, and other applicable law;

6.    Allow Plaintiff Operation ABLE permission to elect, prior to final judgment, statutory damages as its recovery rather than actual damages and profits as provided in 15 U.S.C. § 1117;

18

7.      Order Defendant National Able to pay pre-judgment interest on Plaintiff Operation ABLE's damages as provided in 15 U.S.C. § 1117, and other applicable law;

8.      Order Defendant National Able to pay the cost of this action as provided in 15 U.S.C. § 1117, and other applicable law;

9.      Order Defendant National Able to pay Plaintiff Operation ABLE's attorneys' fees of this action as provided in 15 U.S.C. § 1117, G.L. ch. 93A, and other applicable law; and

10.     Grant such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff Operation ABLE of Greater Boston, Inc. hereby demands a trial by jury on all claims so triable.

Respectfully Submitted,

OPERATION ABLE OF GREATER
BOSTON, INC., Plaintiff,
By its attorneys:


     /s/ *Victor H. Polk, Jr.*
Victor H. Polk, Jr., BBO #546099
Eric M. Gold, BBO #660393
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001
polkv@gtlaw.com
golde@gtlaw.com

Date:  June 4, 2009